UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
03 FEB 28 PM 3:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

EARTIS L. BRIDGES, JR.       )
                             )
    Plaintiff,               )
                             )
vs.                          )   Civil Action No. CV-00-S-3535-NW
                             )
SEARS SIDING & WINDOWS, INC.,)
                             )
    Defendant.               )

ENTERED
FEB 2 8 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

Plaintiff, Eartis Bridges, an African-American male, claims that defendant Sears Siding & Windows, Inc., unlawfully discriminated against him on the basis of race by terminating his employment as an independent contractor, in violation of 42 U.S.C. § 1981. This action presently is before the court on the following motions: (i) defendant's motion for summary judgment (doc. no. 31); (ii) defendant's motion for reconsideration of this court's order denying its motion for leave to amend its answer (doc. no. 40); (iii) defendant's motion to strike plaintiff's evidentiary submission (doc. no. 46); (iv) defendant's motion for leave to file a reply brief (doc. no. 48); and, (v) plaintiff's motion to strike untimely submission of evidence (doc. no. 53). Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that defendant's motion for leave to file a reply brief is due to be granted, and that the remaining motions are due to be denied.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

The following facts are pertinent to the resolution of defendant's motion for summary judgment. Plaintiff worked as a window installer beginning in 1996 or 1997, with his business partner, Brian Kramer.[1] Although plaintiff and Kramer considered themselves partners, only Kramer executed an independent subcontractor agreement with Spray-Tech, Inc., the company for which he and plaintiff installed windows.[2]

On February 4, 1998, Sears, Roebuck & Co. purchased all of the issued and outstanding stock of Spray-Tech, Inc.[3]

During August of 1998, Kramer moved to Buffalo, New York. Plaintiff continued to operate

---

[1] Doc. no. 32 (Memorandum in Support of Motion for Summary Judgment), ex. A (deposition of plaintiff), at 46.

[2] *Id.* at 45-46.

[3] Doc. no. 48 (Ex parte Motion for Leave of Court to File Reply Memorandum on Behalf of Sears Siding & Windows), ex. B.

2

their business, and signed an independent subcontractor agreement with Spray-Tech, Inc., on August 4, 1998.[4] On that same date, and in connection with that agreement, plaintiff executed a "Secrecy Agreement" which refers to "Spray-Tech, Inc., a Florida Corporation d/b/a *Sears Coating and Siding*,"[5] and "Statement of Contractor Independence," which contains the following statement: "any person taken to a *Sears Siding and Windows* job site will be an authorized sub-contractor to me and will be insured as required by the state in which I reside."[6]

On August 26, 1999, plaintiff executed an independent subcontractor agreement with Sears Siding & Windows, which replaced his contract with Spray-Tech, Inc.[7]

During the time that plaintiff was employed as an independent subcontractor by Spray-Tech, Inc., and Sears Siding & Windows, project coordinator Ron Wilson assigned window installation jobs to plaintiff on behalf of each entity.[8] Wilson testified as follows with respect to organizational changes following the stock purchase of Spray-Tech, Inc., by Sears, Roebuck & Co.:

Q. You were employed by Spray-Tech prior to the purchase by Sears, weren't you?

A. Yes, sir.

Q. What was the difference?

A. It was a — just a gradual change into different paperwork, different forms, and everything that I had to fill out and reporting personnel.

Q. Who did you report to prior to the purchase?

A. Bill Martin at first and then John Atti?

---

[4] *Id.* at deposition ex. 1.
[5] *Id.* at deposition ex. 5 (emphasis supplied).
[6] *Id.* at deposition ex. 7 (emphasis supplied).
[7] *Id.* at deposition ex. 10.
[8] *Id.* at ex. C (deposition of Ron Wilson), at 8-9.

Q. Who did you report to after the purchase?

A. John Atti.

. . . .

Q. What company did Mr. Atti work for at the time

. . .

A. He worked for Spray-Tech. Then when the name changed, it was Sears.[9]

Plaintiff contends that defendant is liable for acts occurring while he was under contract both with Spray-Tech, Inc., and Sears Siding & Windows. Defendant contends that it is not liable for acts occurring while plaintiff was under contract with Spray-Tech, Inc.[10] In its reply brief, defendant argues that

> Plaintiff blindly asserts that "Sears" simply changed the name of its subsidiary from Spray-Tech to Sears, [sic] Siding and Windows. Again, Plaintiff has no evidence to support his claim that SSW should be liable for the acts and conduct of Spray-Tech. Plaintiff misinterprets the corporate structure of SSW. Spray-Tech was a separate and distinct corporation that was bought via a stock purchase, by Sears, Roebuck and Company in February of 1998. (Exhibit A, Spray-Tech, Inc. documents; Exhibit B, Stock Purchase Agreement.) Prior to that time, Spray-Tech was simply a licensee of Sears. Plaintiff has not asserted any factual basis for how SSW could become liable for the damages incurred by Spray-Tech.[11]

The court finds, however, as the foregoing factual recitation illustrates, that the exact relationship between Spray-Tech, Inc., and Sears Siding & Windows is far from clear. As noted above, for example, some of the documents plaintiff signed in connection with his independent subcontractor agreement with Spray-Tech, Inc., include references to "Sears Coating and Siding" and "Sears Siding and Windows." The project coordinator remained the same for the duration of

---

[9] *Id.* at 11-12.

[10] Doc. no. 32 (Memorandum in Support of Motion for Summary Judgment), at 13.

[11] Reply Memorandum on behalf of Sears Siding & Windows, appended to doc. no. 48 (Ex parte Motion for Leave of Court to File Reply Memorandum on Behalf of Sears Siding & Windows), at 5.

4

each of plaintiff's contracts. On the other hand, plaintiff was required to execute a new, independent subcontractor agreement with Sears Siding & Windows on August 26, 1999, more than 18 months after the stock purchase agreement between Sears, Roebuck & Co. and Spray-Tech, Inc., was executed, and more than one year after plaintiff executed an independent subcontractor agreement with Spray-Tech, Inc.

For the foregoing reasons, the court concludes that a genuine issue of material fact exists, and that defendant's motion for summary judgment is due to be denied. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 28th day of February, 2003.

_____
United States District Judge